GRUNDY COUNTY, Appellant,

v.

Earl Ray DYER, Appellee.

Supreme Court of Tennessee,
Middle Section.

Feb. 14, 1977.

Harry W. Camp, Camp & Roney, McMinnville, for appellant.

Walter H. Griswold, County Atty. for Grundy County, McMinnville, for appellant.

Robert S. Peters, Swafford, Davis & Peters, Winchester, for appellee.

## OPINION

HENRY, Justice.

This civil action arises under §§ 8–832, 8–834, T.C.A. and primarily involves the liability of a county under these statutory provisions for the acts of a deputy sheriff.

The trial judge sustained the motion of the plaintiff for a summary judgment, awarded judgment against Grundy County, sustained the motion of the bonding company for a judgment on the pleadings, and dismissed Grundy County's third party complaint.

We affirm so much of the trial judge's action as sustained the bonding company's motion for judgment on the pleadings and the ensuing dismissal of Grundy County's third party complaint. We reverse the action of the trial judge in sustaining the plaintiff's motion for summary judgment.

## I

### The Pleadings

Plaintiff was arrested for public drunkenness, while attending the Grundy County Fair at Altamont, by two deputies sheriff. En route to the county jail they stopped the car and made an unwarranted and unjustified attack on plaintiff, beating him with a flashlight, a slap-jack and fists. Plaintiff suffered various injuries and incurred expenses in connection with medical treatment.[1]

He instituted suit in the United States District Court for the Eastern District of Tennessee against the two deputies, the Grundy County Sheriff and Grundy County. According to the rather vague allegations of the complaint the District Court "declined jurisdiction over the defendant Grundy County."[2]

The only part of the Federal Court proceedings exhibited with the complaint is the final judgment of the court. From this document, it appears that the court (1) awarded plaintiff judgments against each defendant deputy in the sum of one thousand, two hundred and fifty (1,250.00) dollars compensatory damages and the sum of two thousand, five hundred (2,500.00) dollars punitive damages (total $3,750.00), and (2) dismissed the suit as to the sheriff. No mention is made of Grundy County.

Plaintiff then filed suit against Grundy County in the Circuit Court at Altamont, seeking to recover the entire amount of the Federal Court judgment. From the affidavit of plaintiff, appended to his motion for a summary judgment, it appears that the defendant deputies have satisfied the judgment to the extent of twenty-five hundred ($2,500.00) dollars.

The suit thus stands as an effort to charge Grundy County with payment of the remaining five thousand ($5,000.00) dollars.

Grundy County filed its answer (1) pleading governmental immunity except as modified by §§ 8–833 and 8–834, T.C.A., (2) exhibiting a copy of the Sheriff's surety bond, (3) asserting that its liability, if any, is limited to the amount of the bond, and (4) pleading *res adjudicata* (asserting that the Federal Court issues were resolved in favor of the county). The County, pursuant to Rule 14.01, Tenn.R.Civ.P., filed its third party complaint against the surety bonding company, taking the position that if plain-

---

1. These are the allegations of the complaint and, under the present posture of the case, we take them to be true.

2. Apparently jurisdiction was invoked pursuant to 42 U.S.C. § 1983.

tiff should recover against the County, it would be entitled to a judgment over against the bonding company.

Prior to the submission of any pleading by the bonding company, the plaintiff moved for a summary judgment, with a supporting affidavit, the primary value of which is to disclose partial satisfaction of the Federal Court judgment. The motion for summary judgment proceeds upon the basis that there is no genuine issue of fact and in support merely summarizes certain portions of the complaint.

The Boston Old Colony Insurance Company, the surety on the Sheriff's appeal bond moved to dismiss on the basis of the provisions of § 8–832. See Sec. III, *supra.*

Next, in point of time, Grundy County moved for a judgment on the pleadings seeking to have the original complaint dismissed, asserting that § 8–834, T.C.A. is void for vagueness. See Sec. IV, infra.

These pleadings led to the action of the trial court as hereinabove set forth. On motion for a new trial, Grundy County (1) complained of the entry of judgment against it in the amount of five thousand ($5,000.00) dollars, pursuant to summary judgment and (2) asserted that Grundy County "has never had a day in court to dispute the amount of damages", since the County "was not a party to the Federal lawsuit at the time damages were assessed. . . . "

## II

### Motion to Dismiss

■ Appellee, Dyer, moved to dismiss the appeal because the motion for a new trial and the appeal bond were prematurely filed.

The technical record shows that the hearing on the motions for summary judgment and for judgment on the pleadings was held on March 1, 1976. The order was not signed until March 17, 1976 and not filed until March 20, 1976. In the meantime, a motion for a new trial was filed on March 16, 1976. It was prematurely filed.

The record shows that the motion for a new trial was heard on July 8, 1976; that the order overruling it was signed on July 19, 1976 and filed with the Clerk on July 24, 1976. In the meantime the appeal bond was executed on July 13, 1976 and filed with the Clerk on July 16, 1976. It also was prematurely filed.

These situations are reflective of the inherent logistical difficulties encountered by the "country lawyer." In this case all court proceedings were conducted in *Altamont*; the presiding judge lives in *Dunlap*, counsel for the appellant practices in *McMinnville*, and counsel for appellee practices in *Winchester*.

It would be manifestly unjust, absent prejudice to the complaining party, to dismiss this appeal and penalize a lawyer and his client for promptness.

We overrule the motion to dismiss.

## III

### Liability of surety for acts of Deputy Sheriff

It is necessary that we address this question, as a prelude to discussion of the contentions of the parties. The act under consideration is carried forward in the Official Code in pertinent part as follows:

8–832. *Liability for wrongs of deputies —Limitation.*—No sheriff, whether elected or appointed, nor any surety on his bonds, shall be liable for any wrongs, injuries, losses, damages or expenses incurred as a result of any act or failure to act on the part of any deputy appointed by said sheriff, whether said deputy is acting by virtue of office, under color of office or otherwise.

8–833. *Suits against counties for wrongs of deputies.*—Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided that the deputy is, at the time of such occurrence, acting by virtue of, or under color of his office.

8–834. *Waiver of governmental immunity—Limit.*—The governmental immunity of the county in which the said sheriff serves is waived for purposes of § 8–833, but to an extent not in excess of the amount of the surety bond executed for that county's sheriff pursuant to § 8–803.

Chapter 19, of Title 8, T.C.A. governs the official bonds of all state and county officers required by law to furnish official bonds. § 8–1920 reads as follows:

8–1920. *Obligations covered by bonds.*—Every official bond executed under this Code is obligatory on the principal and sureties thereon—

(1) For any breach of the condition during the time the officer continues in office or in the discharge of any of the duties of such office.

(2) For the faithful discharge of the duties which may be required of such officer by any law passed subsequently to the execution of the bond, although no such condition is expressed therein.

(3) For the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by the failure to perform, or the improper or neglectful performance, of the duties imposed by law.

■ It is evident that there is an apparent and irreconcilable conflict between § 8–1920 making the surety company liable for "any wrongful act committed under color of his office", etc., and § 8–832 providing, in substance, that neither the sheriff nor his surety shall be liable for the acts of his deputy, even though "acting by virtue of office, under color of office or otherwise."

Sec. 8–832, as a subsequent and specific act, must control. See e.g., *Strader v. United Family Life Ins. Co.,* 218 Tenn. 411, 403 S.W.2d 765 (1966).

■ Applying the controlling statute, § 8–832, we hold that the trial judge correctly sustained the motion of Boston Old Line Insurance Company, the surety on the sheriff's official bond, for a judgment on the pleadings, and properly dismissed the third party complaint.

## IV

### *Constitutionality*

A principal thrust of appellant's position in this Court is that § 8–834 is void for vagueness. Counsel persuasively argues that the entire act (Chapter 800, Acts of 1972) was "written by several members of a committee which never met", and urges that Sec. 1 (§ 8–832, T.C.A.) and Sec. 3 (§ 8–834) are in violent conflict. Counsel concedes that each section, standing alone, is clear, but when all are read together, the "whole scheme becomes nonsense" and "should be declared void for vagueness."

We agree with counsel that the act is not a model of clarity and its draftmanship leaves much to be desired. However, when read in the light of the evident purpose of the legislature, we think all ambiguity is resolved.

It is clear that § 8–832, T.C.A. operates to relieve the sheriff and his surety from liability for the acts of his deputy whether the deputy is "acting by virtue of office, under color of office or otherwise."

It is equally clear that § 8–833, T.C.A. authorizes suit against the County based upon the acts of a deputy sheriff if, *but only if,* the deputy is at the time "acting by virtue of, or under color of his office."

The ensuing section waives the immunity of the county as to such suits but *only* to the extent of the amount of the sheriff's surety bond.

■ Section 8–834, T.C.A. measures the extent of liability, but does not specifically point to the source of the payment. However, the obvious source is the county general fund; otherwise there is no immunity and the express *pro tanto* waiver would serve no useful purpose.

These Code sections came under our scrutiny in *O'Neal v. DeKalb County,* 531 S.W.2d 296 (Tenn.1975). There we pointed out that § 8–833 sanctions suits against counties for the misconduct of deputies and represents a waiver of governmental immunity.

These Code sections are fairly analogous to § 6–640, which reads, in pertinent part, as follows:

6–640. *Indemnification for employees sued for damages in the course of their employment—Exceptions—Limits of liability.*—Whenever any county sheriff and his deputies or any employee member of a fire or police department of a municipal corporation or other political subdivision of the state of Tennessee shall be sued for damages arising out of the performance of his official duties and while engaged in the course of his employment by such governmental agency, such governmental agency shall be authorized and required to provide defense counsel for such employee in such suit and to indemnify him from any judgment rendered against him in such suit; provided, however, that such indemnity shall not extend to any judgment for punitive damages or for damages arising out of any willful wrongdoing by said employee and; provided, further, that such municipal corporation or other political subdivision shall have notice of such suit.

The instant suit could not stand under § 6–640 since punitive damages are involved; however, this does not preclude an analytical comparison.

It is significant to note that § 6–640 was enacted as Chapter 782 of the Public Acts of 1972, while § 8–832, et seq. were enacted as Chapter 800, by the same legislature and [3] at the same session.

We held in *City of Memphis v. Roberts*, 528 S.W.2d 201 (Tenn.1975) that § 6–640 provided a form of public insurance against theretofore immune activities and constituted a partial waiver of governmental immunity.

■ We think, when consideration is given to the wording of the sections themselves, and to the context in which they were adopted, that Chapter 800, of the Public Acts of 1972, carried forward into the Official Code as §§ 8–332, 8–333 and 8–834,

is not impermissibly vague and is constitutional.

V

*Grundy County's Day in Court*

The remaining assignments are critical. In general, they charge the trial court with error in "entering judgment against Grundy County based on a judgment in another court in another action to which Grundy County was not a party" and thus depriving the county of "a day in court to contest the amount of damages."

■ We think that the statutory scheme basically contemplates a direct action against the county. We do not feel, however, that it operates to preclude an action on a judgment obtained against a deputy in another jurisdiction, provided, proof of liability and damages are determined in an adversary proceeding with full opportunity to the county to participate. We cannot conceive of the county being held liable on a judgment rendered in a case in which it did not participate fully and as an adversary.

Again we look to § 6–640, T.C.A. and to a recent decision of this Court, *Banks v. City of Mason*, 541 S.W.2d 143 (Tenn.1976). There a judgment was obtained in Federal Court against a city policeman and suit was instituted in the state court to enforce the collection of the judgment against the City of Mason. Mason was not a party to the Federal Court action but did provide counsel as required by § 6–640, T.C.A. In holding that the City of Mason was entitled to litigate liability in a suit brought pursuant to § 6–640, we said:

It is elementary that a municipality must be provided the right to deny liability for a judgment against the employee on the basis of the statutory defense of willful misconduct, and the courts must be open to the assertion of that defense in a suit brought subsequent to the tort action. This is necessarily true whether or not

3. Chapter 782 was passed April 14, 1972 and signed by the Governor on April 19, 1972. Chapter 800 was passed April 7, 1972 and signed by the Governor on April 24, 1972. See bound volume, Public Acts of 1972.

willfulness is asserted or adjudicated in the tort action.

541 S.W.2d at 146.

The rationale of *Banks v. City of Mason* is convincing and controlling.

■ We sustain the assignments relating to this issue and hold that the trial judge erred in sustaining plaintiff's motion for a summary judgment and in awarding judgment against Grundy County. On remand, Grundy County may litigate liability and damages to the same manner and to the same extent as if the Federal Court judgment had not been awarded. Be it remembered that the Circuit Court of this state, acting under § 8–832, et seq., constitutes a forum wherein the plaintiff could obtain full and adequate relief. He elected a forum in which the county was not a proper party and could not participate since it is not a "person" or a suable entity within the meaning of 42 U.S.C. § 1983. See Note 121, to 42 U.S.C.A. § 1983.

We can appreciate the manifest advantage of a suit in Federal Court, free from local influences and pressures; however, we are compelled to hold that Grundy County is entitled to its day in court.

On remand, a viable issue will also be whether the deputy was "acting by virtue of, or under color of his office", a condition precedent to the recovery of any judgment against Grundy County. This is a substantial issue of fact.

Affirmed in part; reversed in part; remanded.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.