# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### JANUARY 25, 2011 Session

## TAWANNA CURRIE v. HAYWOOD COUNTY, TENNESSEE

**Direct Appeal from the Circuit Court for Haywood County**
**No. 3621      Clayburn Peeples, Judge**

**No. W2010-00453-COA-R3-CV - Filed March 10, 2011**

Plaintiff sued Haywood County and a Haywood County sheriff's deputy after she was sexually harassed by the deputy. Following a bench trial, the trial court entered judgment in favor of the Plaintiff against Haywood County and against the deputy. Haywood County appeals, challenging the finding of liability and the amount of damages awarded against it. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

James I. Pentecost, William B. Mauldin, Jackson, Tennessee, for the appellant, Haywood County, Tennessee

Christopher L. Taylor, Jackson, Tennessee, for the appellee, Tawanna Currie

**OPINION**

**I. FACTS & PROCEDURAL HISTORY**

In February of 2002, Tawanna Currie ("Plaintiff") dialed 911 after her brother overdosed on pain medication. Haywood County Sheriff's Deputy Tim Rogers was the first to arrive on the scene. Plaintiff's brother was unresponsive, and when the paramedics arrived, they placed him on a stretcher and loaded him into the ambulance. However, the paramedics were not certain as to which hospital they would transport him. Plaintiff's mother was leaving Plaintiff at home alone to go to the hospital with her son. Plaintiff informed Deputy Rogers that there was no telephone service in the house, and apparently, the cell phone she had used to dial 911 was no longer available. Deputy Rogers told Plaintiff that he would return to the house to let her know where the ambulance was taking her brother when he became aware of such information.

After escorting the ambulance to the interstate, and later learning its destination hospital, Deputy Rogers returned to Plaintiff's residence. Deputy Rogers was still on-duty, in his patrol car, and wearing his uniform, badge, and gun. When Deputy Rogers knocked on the door and announced his presence, Plaintiff opened the door and told him to come inside. Deputy Rogers told Plaintiff to which hospital her brother was being taken, and he updated her on his condition. Plaintiff thanked Deputy Rogers and resumed washing dishes. Deputy Rogers then approached Plaintiff and began touching her inappropriately and asking her to kiss him. Plaintiff asked Deputy Rogers to stop and repeatedly pushed him away, but he continued to touch her inappropriately and then picked her up. Plaintiff began to cry and continued to tell him "no," and Deputy Rogers eventually left the house.

The next day, Plaintiff went to the Haywood County Sheriff's Department and filed a report against Deputy Rogers. Following an investigation, Deputy Rogers was terminated because of the incident. He pled guilty to a charge of official misconduct, which, according to the Haywood County Sheriff, basically means "[n]ot conducting yourself as a professional police officer . . . [i]n your official capacity."

Plaintiff subsequently filed suit against Haywood County and Deputy Rogers. Plaintiff asserted various causes of action, but relevant to this appeal, she alleged that Haywood County was liable for Deputy Rogers' official misconduct pursuant to Tennessee Code Annotated section 8-8-302, which provides:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the

deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Haywood County filed a motion to dismiss for failure to state a claim, which was denied, and it later filed a motion for summary judgment, which was granted in part but denied as to Plaintiff's claim pursuant to section 8-8-302. Following a bench trial, the trial court entered a judgment for Plaintiff, finding that Deputy Rogers was acting by virtue of or under color of his office at the time of the occurrence, and therefore, Haywood County was liable for his actions. The court awarded Plaintiff a judgment against Haywood County for $50,000 and a judgment against Deputy Rogers for $25,000. Haywood County timely filed a notice of appeal.

## II. ISSUES PRESENTED

Haywood County presents the following issues, slightly restated, for review on appeal:

1. Whether the trial court erred in denying Haywood County's motion for summary judgment as to Plaintiff's claim under Tenn. Code Ann. § 8-8-302;
2. Whether the trial court erred in denying Haywood County's motion to dismiss;
3. Whether Haywood county can be held liable for the actions of Deputy Rogers under Tenn. Code Ann. § 8-8-302;
4. Whether the trial court's award of $50,000 in damages against Haywood County violates Tenn. Code Ann. § 8-8-303(a).

For the following reasons, we affirm the decision of the circuit court.

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the resolution of the issues in a case depends upon the truthfulness of witnesses, the fact-finder, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC*, 102 S.W.3d 638, 643

(Tenn. Ct. App. 2002). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A. *Haywood County's Motion for Summary Judgment*

We first address Haywood County's contention that the trial court erred in allowing Plaintiff's claim pursuant to section 8-8-302 to survive its motion for summary judgment and proceed to trial. Haywood County claims that the evidence presented at the summary judgment stage did not create a material issue of fact for trial, and it asks this Court to reverse the trial court's decision and award it summary judgment on Plaintiff's statutory claim. "We note, however, that when the trial court's denial of a motion for summary judgment is predicated upon the existence of a genuine issue as to a material fact, the overruling of that motion is not reviewable on appeal when subsequently there has been a judgment rendered after a trial on the merits." **Arrow Electronics v. Adecco Employment Servs., Inc.**, 195 S.W.3d 646, 650 (Tenn. Ct. App. 2005) (citing *Hobson v. First State Bank*, 777 S.W.2d 24, 32 (Tenn. Ct. App. 1989); *Mullins v. Precision Rubber Products*, 671 S.W.2d 496, 498 (Tenn. Ct. App. 1984); *Tate v. County of Monroe*, 578 S.W.2d 642, 644 (Tenn. Ct. App. 1978)). Because the trial court denied Haywood County's motion for summary judgment and subsequently decided the case on the merits, we will not review the trial court's denial of summary judgment.

### B. *Haywood County's Motion to Dismiss*

Although it does not cite any authority in support of its position, Haywood County also argues on appeal that the trial court should have granted its motion to dismiss. Most of the arguments presented in the motion to dismiss dealt with a claim set forth in Plaintiff's complaint pursuant to the Tennessee Governmental Tort Liability Act ("GTLA"). The GTLA claim was later dismissed based on Haywood County's motion for summary judgment. Haywood County argues that the GTLA claim should have been dismissed earlier and not allowed to proceed for four years prior to the summary judgment award. Because the GTLA claim was ultimately dismissed, however, the trial court's denial of the original motion to dismiss did not affect the judgment or result in prejudice to Haywood County. Thus, the alleged error would be harmless, and we will not consider the issue. *See* Tenn. R. App. P. 36.

Next, Haywood County argues that Plaintiff's claim pursuant to section 8-8-302

-4-

should not have survived its motion to dismiss. In support of its argument, it incorporates by reference the argument set forth in its brief regarding whether the trial court erred in ultimately finding liability pursuant to section 8-8-302, so we now turn to a consideration of that issue.

### C.    Liability pursuant to T.C.A. § 8-8-302

As stated above, Tennessee Code Annotated section 8-8-302 basically provides that anyone who incurs a wrong or injury resulting from an act on the part of a deputy appointed by the sheriff may bring suit against the county, "provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office."[1] In other words, the county's governmental immunity is waived for suits arising from the acts of a deputy sheriff who was "acting by virtue of or under color of the office." Tenn. Code Ann. § 8-8-302–303; *Cross v. Shelby County*, No. W2005-01231-COA-R3-CV, 2006 WL 1005168, at *2 (Tenn. Ct. App. Apr. 18, 2006). Thus, "in order to recover from a governmental entity for the intentional misconduct of a deputy under this statute, it must be established that the misconduct occurred while the deputy was acting by virtue of or under color of his office." *J.W. ex rel. Watts v. Maury County*, No. M2001-02768-COA-R3-CV, 2003 WL 1018138, at *7 (Tenn. Ct. App. W.S. Mar. 11, 2003) *perm. app. denied* (Tenn. Sept. 2, 2003). Unfortunately, sections 8-8-301 to 303 of the Tennessee Code do not define this phrase. In considering the meaning of the phrase "by virtue of or under color of office," for purposes of section 8-8-302, this Court has previously stated:

> A criminal statute, section 39-16-402 of the Tennessee Code Annotated, is instructive on the interpretation of the phrase "by virtue of or under color of office." Section 39-16-402 provides:
>
> > (a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly: ... (2) Commits an act under color of office or employment that exceeds the servant's official power....
> > (b) For purposes of subdivision (a)(2), a public servant commits an act under color of office or employment who acts or purports to act in an official capacity *or takes advantage of such actual or purported capacity.*

---

[1] The GTLA superceded Tenn. Code Ann. §§ 8-8-301, et seq., as it relates to actions based on negligent acts, but Tenn. Code Ann. §§ 8-8-301, et seq., still controls as to suits for intentional acts of official misconduct by sheriff's deputies. *Swanson v. Knox County*, No. E2007-00871-COA-R3-CV, 2007 WL 4117259, at *4 (Tenn. Ct. App. Nov. 20, 2007) (citing *Jenkins v. Loudon Co.*, 736 S.W.2d 603 (Tenn. 1987)).

Tenn. Code Ann. § 39-16-402 (1997) (emphasis added). Thus, when a deputy sheriff intentionally or knowingly uses his office to facilitate a crime, he is acting under color of his office under this statute. See also Tex. Penal Code Ann. § 39.02 (Vernon 2002); *Bryson v. Texas*, 807 S.W.2d 742 (Tex. Crim. App. 1991).

*Watts*, 2003 WL 1018138, at *7.

It is also helpful to review some examples of cases applying section 8-8-302. In ***Corder v. Metro. Gov't of Nashville & Davidson County***, 852 S.W.2d 910, 913 (Tenn. Ct. App. 1992), a deputy stopped at a club after work, had a few beers, then left in his car to continue home. He stopped at a gas station, where he saw an acquaintance who asked for a ride. The deputy began to tease his acquaintance by pointing his gun at him, and it accidentally fired, killing the man. The deputy was wearing his badge at the time, and he identified himself as a deputy sheriff when he reported the incident to the police. Nevertheless, the Court concluded that the facts conclusively established that the deputy was acting neither by virtue of his office nor under color of his office. Instead, the Court found, the deputy was simply an off-duty officer, on his way home from work, who was teasing a friend or acquaintance. The Court noted that "[t]he fact that [the deputy] was wearing a badge does not establish that his every action was by virtue of or under color of his office." *Id.* at 914.

Likewise, in ***Doe v. May***, No. E2003-1642-COA-R3-CV, 2004 WL 1459402, at *2-3 (Tenn. Ct. App. Jun. 29, 2004) *perm. app. denied* (Tenn. Dec. 28, 2004), the Court concluded that a deputy was not acting by virtue of or under color of his office for purposes of section 8-8-302 when he engaged in a sexual relationship with a minor. The minor claimed that she agreed to have sex with the man and was more attracted to him because he was a deputy, and she said that during one encounter, he was in uniform. The minor also claimed that she thought she would not get in trouble for having sex with the man because he was a deputy, and she thought the deputy could help her with a problem involving school. Still, the Court emphasized that the deputy was not on-duty when the acts took place, and he did not "use his official status to put himself in the position to commit the crimes he is accused of." *Id.* at *3. Instead, the deputy had come into contact with the minor because he was a close friend of the minor's mother. Because these facts did not describe "a mis-use of official power to facilitate a wrong," there was no liability pursuant to section 8-8-302. *Id.*

In *Watts*, this Court considered the actions of a school resource officer who was placed in a school by the local sheriff's department and whether he was acting by virtue of or under color of his office under section 8-8-302. 2003 WL 1018138, at *1. After a student

had attempted suicide, the student's mother contacted the officer and asked him to speak to the student. *Id.* at *2. The officer suggested that the student spend the night at his apartment, and the mother agreed. While at the apartment, the officer provided the student with alcohol and then sexually assaulted him. *Id.* at *3. The Court of Appeals reversed summary judgment in favor of the county, finding that a genuine issue of material fact existed regarding whether the officer was acting by virtue of or under color of his office. *Id.* at *7. The Court noted that the student's mother contacted the deputy at least in part due to his position as a school resource officer, and that the deputy had used his status as an officer to persuade the mother to trust him. Thus, the Court concluded that a genuine issue of fact existed as to whether the officer took advantage of his capacity as an officer to facilitate the sexual assault. *Id.*

In ***Doe v. Pedigo***, No. E2002-01311-COA-R3-CV, 2003 WL 21516220, at *1 (Tenn. Ct. App. Jun. 30, 2003) *perm. app. denied* (Tenn. Jan. 26, 2004), the Court of Appeals considered whether a county medical examiner was acting by virtue of or under color of his office for purposes of section 8-8-302. A minor was accompanying the medical examiner while he was on call in the hopes of observing his investigation of crime scenes. When there were no calls for investigations, the two went to the medical examiner's condominium. The medical examiner told the minor that it was necessary for him to receive a hepatitis B vaccine in case he was exposed to blood at a crime scene. Unbeknownst to the minor, however, the medical examiner had mixed his vaccine with an incapacitating drug which rendered him unconscious. The medical examiner then took nude photographs of the minor. The Court of Appeals concluded that a genuine issue of material fact existed regarding whether the medical examiner intentionally or knowingly used his office to facilitate the crimes committed against the minor, and thus, acted by virtue of or under color of his office. *Id.* at *9.

In the case at bar, it was undisputed that the only reason Deputy Rogers went to Plaintiff's house was because he was dispatched in response to the 911 call. In addition, Melvin Bond, Jr., who was serving as Haywood County Sheriff at the time of trial, testified that there was nothing wrong with Deputy Rogers returning to Plaintiff's house in his capacity as deputy sheriff to inform her of her brother's condition and whereabouts because she had no telephone. However, he testified that Deputy Rogers should have simply reported the information and returned to his car without ever entering Plaintiff's house. Sheriff Bond testified that Deputy Rogers was "totally out of line" by entering Plaintiff's house and that he "went out of the scope of our professional (sic) by crossing that threshold." However, Sheriff Bond later admitted that there was nothing wrong with Deputy Rogers stepping inside the house to tell Plaintiff the necessary information, assuming that he had no ulterior motive. Sheriff Bond then indicated that he had no problem with Deputy Rogers' actions up until the point that he assaulted Plaintiff.

Haywood County conceded that Deputy Rogers was acting by virtue of his office when he returned to Plaintiff's house to update her about her brother. However, it argues on appeal that Deputy Rogers' subsequent decisions to enter the house and to assault Plaintiff were against county policies and procedures, and therefore he was not acting by virtue of or under color of his office at that time. In other words, Haywood County claims that once Deputy Rogers entered the residence and informed Plaintiff of her brother's status, his authorized duties as a deputy ceased and he was no longer acting by virtue of or under color of office. We cannot agree. Tennessee Code Annotated section 8-8-302 provides a remedy for "official *misconduct* of deputies" when the deputy was, at the time of the occurrence, acting by virtue of or under color of office. *Swanson*, 2007 WL 4117259, at *4 (emphasis added); *see also Watts*, 2003 WL 1018138, at *3 (stating that the statute allows recovery for "the intentional misconduct of a deputy"). If, as Haywood County contends, a deputy can only be found to be acting by virtue of or under color of office when acting in compliance with governing procedures, the statute would not serve the aforementioned purpose of addressing deputy *misconduct*. Under Haywood County's argument, as we understand it, misconduct could not be characterized as action taken by virtue of or under color of office.

Whether Deputy Rogers was acting by virtue of or under color of his office is an issue of fact. *See Grundy County v. Dyer*, 546 S.W.2d 577, 582 (Tenn. 1977). According to *Watts*, "when a deputy sheriff intentionally or knowingly uses his office to facilitate a crime, he is acting under color of his office[.]" 2003 WL 1018138, at *7. Furthermore, "a public servant commits an act under color of office or employment who acts or purports to act in an official capacity *or takes advantage of such actual or purported capacity*." *Id.* (quoting Tenn. Code Ann. § 39-16-402) (emphasis in *Watts*). Applying this reasoning, we conclude that the evidence does not preponderate against the trial court's finding that Deputy Rogers was acting by virtue of or under color of his office when he assaulted Plaintiff. Unlike *May*, this case clearly involves a "misuse of official power to facilitate a wrong," as Deputy Rogers "use[d] his official status to put himself in the position to commit the [acts] he is accused of." 2004 WL 1459402, at *3. We respectfully disagree with Haywood County's argument that Deputy Rogers "did not gain access to [Plaintiff's] home through the use of his office." Therefore, we affirm the trial court's finding that Haywood County is liable for Deputy Rogers' actions pursuant to Tennessee Code Annotated section 8-8-302.

### D.   Damages

Finally, Haywood County argues that the trial court erred in awarding a judgment to Plaintiff against Haywood County in the amount of $50,000. Haywood County cites Tennessee Code Annotated section 8-8-303, which provides, in relevant part:

(a) The governmental immunity of the county in which the sheriff serves is

waived for purposes of § 8-8-302, but *to an extent not in excess of the amount of the surety bond executed for that county's sheriff* pursuant to § 8-8-103.
. . . .

(emphasis added). The referenced statute, Tennessee Code Annotated section 8-8-103, provides, in pertinent part:

The sheriff . . . shall enter into an official bond . . . in a penalty of not less than twenty-five thousand dollars ($25,000), or in a greater sum as the county legislative body may determine . . . .[2]

In sum, pursuant to Tennessee Code Annotated section 8-8-303, a county's liability for purposes of section 8-8-302 is waived only to the extent of the amount of the sheriff's surety bond.[3] **Grundy County**, 546 S.W.2d at 580; **Cross**, 2006 WL 1005168, at \*2. Pursuant to Tennessee Code Annotated section 8-8-103, the sheriff's bond shall be "not less than twenty-five thousand dollars ($25,000), or in a greater sum as the county legislative body may determine." Here, there is no proof in the record regarding the actual amount of the sheriff's bond, and therefore, we find no support for Haywood County's assertion that the trial court entered a judgment in excess of the amount of the sheriff's surety bond in violation of Tennessee Code Annotated section 8-8-302.

During opening statements before the trial court, counsel for Haywood County argued that any judgment entered against it could not exceed the amount of the *deputy's* bond. He then suggested that the parties stipulate that "the bond amount that is set for the deputy" in this case is $25,000. He went on to say, "well, we may not be able to stipulate, but that's what it is." In response, Plaintiff's counsel indicated that he wished to rely upon the argument in his pre-trial brief, which is not in the record before us. At the conclusion of the trial, however, the judge asked Plaintiff's counsel about his position on this issue, and although his response was somewhat unclear, Plaintiff's counsel seemed to suggest that the *sheriff's* bond in this case is $50,000. In any event, neither party presented any actual proof

---

[2] The sheriff's bond is required to be "acknowledged before the county legislative body, in open session, approved by it, recorded upon the minutes, and recorded in the office of the county register of deeds and transmitted to the comptroller of the treasury for safekeeping." Tenn. Code Ann. § 8-8-103.

[3] In **Grundy County**, the Supreme Court clarified that the sheriff and his surety are not actually liable for the acts of the deputy. 546 S.W.2d at 580; *see also* Tenn. Code Ann. § 8-8-301 ("No sheriff, whether elected or appointed, nor any surety on the sheriff's bonds, shall be liable for any wrongs, injuries, losses, damages or expenses incurred as a result of any act or failure to act on the part of any deputy appointed by the sheriff, whether the deputy is acting by virtue of office, under color of office or otherwise.") The sheriff's bond simply "measures the extent of liability, but does not specifically point to the source of the payment." **Grundy County**, 546 S.W.2d at 580. Thus, the county remains liable for the damages. *Id.*

regarding the actual amount of the sheriff's bond. Because there is no admissible evidence in the record regarding the actual amount of the sheriff's bond in this case that would support Haywood County's argument, we affirm the trial court's award of damages in the amount of $50,000.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to the appellant, Haywood County, and its surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.